# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JANA SWEISSI, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| V. | § | Civil Action No. 3:25-CV- 1366 |
| | § | |
| | § | |
| | § | |
| DALLAS COUNTY; | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Jana Sweissi ("Ms. Sweissi") files this civil action seeking redress for violations of her constitutional and statutory rights. Ms. Sweissi's right to free exercise of her religion – found in the United States and Texas constitutions, as well as federal and state statutes – was violated when she was forced to remove her religiously mandated hair and body covering ("hijab") for her booking photographs. These booking photographs continue to be accessible to all individuals, male or female, with access to law enforcement databases. Additionally, the photo also appears online through third-party websites and social media postings, which collect and publish booking photographs. Ms. Sweissi has suffered, and continues to suffer, emotional distress as a result of these violations.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over claims set forth herein under 28 U.S.C. § 1331 as the conduct alleged and corresponding remedies fall under 42 U.S.C. § 1983 and other federal statutes. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

2.      Venue is proper in the Northern District of Texas because all acts and/or omissions alleged herein occurred in this District. 28 U.S.C. § 1391(b)(2). Defendant also resides in the Northern District of Texas. 28 U.S.C. § 1391(b)(1).

## PARTIES

3.      Plaintiff Jana Sweissi resides in Dallas County, Texas.

4.      Defendant Dallas County is a political subdivision of the state of Texas. The County of Dallas includes the Dallas County Sheriff's Department, which runs the Dallas County Jail.

5.      Defendant Dallas County can be served with process by serving County Judge Clay Jenkins at 500 Elm Street, Suite 7000, Dallas, TX 75202.

6.      Plaintiff alleges that Defendant was responsible for the events and happenings set forth herein, proximately caused injury and damage to Plaintiff, and is responsible for Plaintiff's damages.

7.      The Dallas County Sheriff's Department and detention officers acted within their scope of authority for the County of Dallas.

8.      Defendant is a governmental entity which engaged in and ratified the tortious and unlawful actions by individual employees of the Dallas County Sheriff's Department, as described herein.

## JURY DEMAND

9.      Plaintiff demands a trial by jury.

## STATEMENT OF THE FACTS[1]

10.      Jana Sweissi is a twenty-four-year-old devout Muslim woman who observes the religious practice of wearing hijab, pursuant to her Muslim faith. The term "hijab" used throughout this complaint refers to the belief and practice of covering the hair, ears, neck, and body in front of all men who are not related to the individual through either consanguinity or marriage. She has been wearing hijab for approximately twelve years and believes it to be a central tenant of her faith and identity as a Muslim woman.

11.      The practice of wearing a hijab is observed by Muslim women globally and traditionally denotes a headscarf, though it includes covering other parts of the body as well.

12.      Ms. Sweissi's hijab is typically secured by an under-piece garment that resembles a bonnet, which covers her hair and ears, and is tied securely at the nape of her neck. Beneath her under-piece, she pulls her hair into a tight bun using a rubber band and a claw clip, to prevent strands of her hair from exposure. She also wears a long flowing scarf on top of this under-piece to ensure that all her hair remains completely covered at all times.

13.      Additionally, Ms. Sweissi wears long sleeves and loose clothing to cover her arms

---

[1] Plaintiff provides in the Statement of the Facts section, the general substance of her factual allegations. Plaintiff does not intend that these sections provide comprehensively, in detail, or even in chronological order, any or all allegations. Instead, Plaintiff presents these sections to provide Defendant sufficient and fair notice as to the general nature and substance of Plaintiff's allegations, and to further demonstrate that Plaintiff's claims have facial plausibility. To the extent that Plaintiff quotes a conversation, she has done so to the best of her recollection and knowledge. Although Plaintiff attempts to sufficiently identify parties, many of their names are currently unknown. Plaintiff pleads specific facts which give rise to the legal claims and redress delineated herein. Plaintiff is not pleading her "best case," as she is incapable of doing so until afforded an opportunity to conduct discovery. Plaintiff seeks leave to amend this pleading as further facts are developed, or if the Court determines Plaintiff's pleading is in any manner deficient.

and the rest of her body.

14.     On October 1, 2024, Ms. Sweissi was involved in a major vehicle collision and was transported to the hospital via ambulance directly from the accident scene. Although she was not interviewed by police on that date, a detective from the Sachse Police Department called her approximately two and a half weeks later, informing her that she had an outstanding arrest warrant for alleged reckless driving, arising out of the collision.

15.     Ms. Sweissi has no criminal history and while she neither understood nor admitted to the allegations levelled against her, she willingly presented herself for book-in and arraignment at the Lew Sterrett Justice Center on November 5, 2023.

16.     At this time, Ms. Sweissi learned that the warrant was not yet active. She left and returned the next morning at 4 a.m., after confirming the warrant had been processed and could be cleared through arrest.

17.     Prior to formally presenting herself for booking, Ms. Sweissi approached the control station manned by various detention officers in the lobby of Lew Sterrett Justice Center. She inquired specifically if she would be permitted to continue wearing her clothes and hijab throughout the booking process.

18.     The detention officer assuaged any concerns she had about the removal of her religious garments and then asked if she was *sure* she wanted to book-in, considering that this was a low-level misdemeanor charge or if she preferred to go home and potentially address it another day.

19.     Ms. Sweissi opted to address the warrant head on, insisting on clearing the warrant and presenting herself for booking.

20.    Ms. Sweissi was then escorted to the custodial detention portion of the building where she was strip searched by two white female officers[2].

21.    On information and belief, Dallas County has a written policy requiring detainees to be subjected to a strip search during booking.

22.    After conducting the strip search, the officers returned all the original garments Ms. Sweissi had been wearing, including her hijab, as well as the under-piece she wore beneath her hijab. The officers did, however, retain Ms. Sweissi's rubber band and claw clip, leaving her hair untied and difficult to keep completely secure under her hijab.

23.    After some time elapsed, the female officers returned and informed Ms. Sweissi that although she was permitted to continue wearing the clothes she entered the jail with, she was prohibited from wearing her own hijab.

24.    In the aggregate, correctional officers confiscated her rubber hand, claw clip, under piece, and the longer garment – all of which worked in tandem to prevent any exposure of her hair, neck, and ears.

25.    As a replacement, correctional officers provided a white paper-like hair covering which featured a cut-out hole for her face. This cut out had an elastic band, presumably to keep the plastic covering around the face.

26.    This replacement hair covering was so ill-fitting that Ms. Sweissi had to continuously hold the garment from the back to prevent the elastic portion from bunching up and falling forward, covering her eyes and face. Furthermore, without a rubber band to tie her hair neatly into a bun, or an under-piece, the hair covering was too short and failed to sufficiently cover

---

[2] Ms. Sweissi does not recall the names of specific detention officers. The complaint refers to the detention officers by their race and gender, to the extent that Ms. Sweissi can recall, for identification purposes.

her hair, which remained visible and uncovered from the bottom and the sides.

27.    Ms. Sweissi pointed out that the replacement garment which detention officers had provided for her hijab was inadequate and failed to accommodate her religious practice. It also covered a significant portion of her eyes and face, hindering her field of vision.

28.    In response, detention officers cut a small slit to widen the hole for her face to fit through, but Ms. Sweissi's hair continued to be visible and poking out from both the sides and the bottom of the garment.

29.    Once again, Ms. Sweissi informed one of the detention officers that her hair was exposed and requested a rubber band to tie it into a bun. Though the complaint and request for accommodation was acknowledged by detention officers, no further action was taken.

30.    Defendant Dallas County's written policy enacted in May of 2024 (provided pursuant to discovery requests in prior litigation) expressly requires detention officers to confiscate the religious head-covering which a detainee is wearing upon arrival, and give the detainee a "jail issue paper head covering/headgear" as a replacement.

31.    At this point in the booking process, detainees are not required to change the rest of their clothes. They are only required to remove and replace their religious hair covering with the jail-issue paper covering.

32.    On information and belief, the replacement Dallas County provides for a hijab is a Dupont Tyvek-manufactured hair covering which is typically used as protective wear for individuals encountering industrial-grade hazardous and non-hazardous chemicals, such as paint.

33.    On information and belief, the Tyvek hair covering alternative is an *attempt* to accommodate. Unfortunately, this product is not designed to be used as a hijab and is insufficient

to adequately accommodate the religious mandates associated with hijab.

34.    The alternative was not sufficient to fully accommodate Ms. Sweissi's religious beliefs, and she stated the same to several detention officers throughout the process.

35.    Ms. Sweissi waited approximately four hours for jail staff to conclude the intake portion of booking before she was moved to a different section of the jail.

36.    She was then taken to an open area with bench seating, where the general inmate population was awaiting arraignment. Male inmates were seated on benches on one side of the room band female inmates were seated on the other side with a separate section of benches. Multiple detention officers were seated in between the male and female sections.

37.    Prior to arraignment, Ms. Sweissi was called up to have her booking photograph taken. A black female detention officer instructed Ms. Sweissi to remove the white paper hair covering (replacing her hijab) for the photograph. Ms. Sweissi refused, specifically stating that her religious beliefs required her to keep her hair, neck, and ears covered, and offered to put her original hijab back on which complied with her religious requirements, or alternatively, continuing to use the ill-fitting white paper hair covering.

38.    The female detention officer replied that Dallas County's policy required Ms. Sweissi to remove her hijab for the picture, insisting upon her compliance. Due to Ms. Sweissi's dogged persistence and demands, the detention officer called her supervisor for Ms. Sweissi to discuss the policy with him directly.

39.    The supervisor, a black male detention officer, arrived to address Ms. Sweissi's concerns. She reiterated her religious objection to displaying her hair for the booking photograph. The supervisor replied, stating that Dallas County's policy required Ms. Sweissi to show her hair

as part of the identification process. Further, the supervisor threatened Ms. Sweissi, saying, "Well, if you don't remove it, we aren't going to process you and you're going to sit here until you remove it."

40.    Ms. Sweissi panicked at the prospect of indefinite custodial detention as punishment.

41.    Feeling coerced and attempting to minimize harm and exposure, she asked the supervisor who would be able access this photograph without hijab, leaving her hair, neck, and ears exposed. The supervisor explained that the photograph wouldn't be publicly accessible and that it was only for internal records. Not knowing what else to do and terrified by indefinite pre-arraignment custodial detention, Ms. Sweissi removed the hair covering for the photograph.

42.    Once Ms. Sweissi was arraigned and bond was set, her husband, who was waiting in the area, immediately posted a full cash bond. Ms. Sweissi informed detention officers of the same to avoid moving to the next phase of booking – requiring the detainee to change into the inmate uniform and housing them in one of the towers and pods of Lew Sterrett jail.

43.    Upon information and belief, Dallas County's written policy provides for an expedited procedure when detention officers are alerted that a cash bond has been posted.

44.    Nonetheless, Ms. Sweissi was strip searched a ***second*** time and directed to change into the inmate uniform.

45.    Detention officers lacked reasonable suspicion or probable cause for either strip search of Ms. Sweissi, who voluntarily surrendered for an alleged reckless driving misdemeanor. The searches were conducted under Dallas County's written policy.

46.    The inmate uniform consisted of a short-sleeved shirt and pants. Ms. Sweissi once

again stated that she had a religious objection to uncovering her arms in an open area, where she was visible to men to whom she was not related through either consanguinity or marriage. The officers informed her they didn't have any clothing accommodations and was required to change into the inmate uniform.

47.    Ms. Sweissi, who'd never been arrested or detained before, had already been in detention after willingly presenting herself to address her warrant for approximately ten hours, began experiencing symptoms of a panic attack. The hair covering provided by jail staff was constricting the air flow around her neck, she felt nauseated and unable to breathe, her heart rate increased, and she felt like she was going to lose consciousness. Prior to this event, Ms. Sweissi had never experienced an anxiety or panic attack.

48.    Ms. Sweissi requested food, hoping that if this was a blood sugar issue, it would be resolved by glucose intake. The only thing detention officers provided were bologna sandwiches, which were not halal compliant, though she had already articulated her religious dietary restrictions.

49.    Dallas County's express written policy and standard operating procedure manual states that the meal "is a civil right." The same manual acknowledges that during the first twenty-four hours of incarceration, Jail Standards requires two meals be served.

50.    The policy also states "Inmates who require special meals (due to medical necessity) will be dealt with by medical staff."

51.    There is no similar exception or exemption for people with religious-based dietary restrictions.

52.    Ms. Sweissi remained in custody for a total of fourteen hours without any halal-

compliant food, which according to Dallas County's own policy is a violation of her civil rights.

53.     Once Ms. Sweissi was finally processed for book-out, her clothing was returned and she was directed to change out of the inmate uniform. Although most of her clothing was kept in her clothing bag, her hijab was placed separately in a tightly-sealed property bag which she received approximately thirty minutes later. The plastic was so thick that the bag couldn't be opened without scissor, a knife, or something similar.

54.     When Ms. Sweissi returned to the lobby entrance of Lew Sterrett, she asked an individual seated on the benches for a lighter, which she then used to melt the plastic to gain access to the contents of the bag and retrieve her hijab.

55.     Once she retrieved her phone from the property bag and left the jail, Ms. Sweissi saw a direct message on social media that displayed her booking photograph without her hijab. Her photograph was also published on Facebook and the website recentlybooked.com. Ms. Sweissi has contacted multiple outlets to remove the photos of her without her hijab, but she is unaware of the extent that this booking photograph was accessed, saved or screenshotted, and disseminated. To date, these booking photographs are still available on the internet without her hijab.

**STATEMENTS AND REPEATED INSTANCES EVIDENCE A POLICY AND PRACTICE OF REMOVING HIJABS FOR BOOKING PHOTOGRAPHS AND SUBSEQUENT FAILURE TO TRAIN**

56.     Dallas County's continued removal of religious headwear runs contrary to the practice of national and state agencies. While Dallas County has amended its policies to allow religious head coverings in photos, it has failed to properly train its staff to ensure that the amended policies are followed. Moreover, Dallas County has failed to provide reasonable religious

accommodations for meals and garments that adequately address the requested religious accommodation.

57.     The statements made by the female detention officer and her supervisor are, standing alone, sufficient to demonstrate a continued pattern or practice of hijab removal at Lew Sterrett. As of the date of this filing, there are two other federal civil cases, with a total of four plaintiffs, pending against Dallas County for the same conduct.  Ms. Sweissi's case is the third case from conduct occurring in the year 2024 alone.

58.     A pattern of behavior established in separate incidents with multiple detention officers illustrates a consistent failure to provide accommodations for religious headwear at Lew Sterrett.

59.     In January 2024, three women were ordered to remove their hijabs for their booking photos at Lew Sterrett by two different officers, in violation of their religious beliefs, ignoring their requests for accommodations. *See El-Hussain v. Dallas Cnty.*, No. 3:24-CV-0737-B (N.D. Tex. Oct. 7, 2024).

60.     As alleged in *El-Hussain*, one officer explained that the three women were required to remove their head coverings because it was "part of the process," indicating that hijabs and religious hair coverings were treated in the same way as hats, wigs, and weaves. The officer also stated that it was the Dallas County Sheriff's Office standard process and procedure to require the removal of any head coverings, and "everyone has to do it." Doc. 10, Am. Compl. ¶¶ 28–29.

61.     At the time of filing in the *El-Hussain* case, Plaintiffs' counsel did not have access to Defendant Dallas County's policy and procedure manuals and Plaintiffs' § 1983 allegations did not survive Defendant's Motion to Dismiss. *See  El-Hussain*, 2024 WL 4446997.

62.     The case moved forward on other legal claims and entered discovery.

63.     Pursuant to discovery requests, the *El-Hussain* plaintiffs received Defendant Dallas County's training materials and standard operating procedures which were operational between 2013 and May 2024.

64.     To Defendant's credit, Dallas County Sheriff's Office modified its standard operating procedures in May of 2024 in response to the *El-Hussain* litigation.

65.     The new policy, which was provided during discovery to Plaintiff's counsel in the *El-Hussain* case, specifically delineates a new procedure for religious-based exceptions and allows for inmates who are covering their hair for religious reasons to continue to remain covered, including in their booking photographs.

66.     Although an explicit policy change was adopted specific to religious headwear, based on the two subsequent lawsuits filed, it is clear this policy has not been implemented.

67.     Detention officers assigned to take mug shots are not aware that the new policy requires accommodation for the booking photograph if the inmate covers their hair for religious reasons.

68.     Further, even the supervisors of these detention officers are unaware of the policy change and have continued to implement the old policy.

69.     In March 2024, Ms. Afsheen Khan was required to completely remove her head covering for booking photographs.

70.     In April of 2024, Ms. Khan was not permitted to immediately have her hijab returned when she was transferred into Dallas County Sheriff's custody from City of Richardson. Furthermore, she was required to show portions of her hairline and ears when taking a photo, even

after her hijab was returned. *See Khan v. City of Richardson et al.*, No. 3:25-cv-01169-B (N.D. Tex.  May 8, 2025).

71.     In all three instances, Dallas County detention officers stated that the removal of the hijab was *required* by Dallas County policy.

72.     None of the forced hijab removals were rogue actors acting in opposition to a stated policy, rather they expressly stated that it was policy which required them to violate the constitutional rights of each of these individuals.

73.     Even with the express policy change, the repeated instances of litigation in the past year alone—regarding the same issue as the instant case—highlights that Defendant knew or should have known that their practice would infringe on constitutional religious liberties and illustrates a failure to train.

74.     On information and belief, there are many more women who have been forced to remove their hijabs for booking photographs.

75.     Although the policy related to religious head coverings has been modified after Dallas County was sued on this specific issue, it remains in force in practical daily implementation, indicating a failure to train on the new constitutionally compliant policy.

## EXCPLICIT POLICY AND PRACTICE

76.     Defendant's jail-issue inmate uniform is short-sleeved. Defendant does not provide religious accommodations to cover the arms.

77.     On information and belief, this is Dallas County's policy and Dallas County does not maintain alternative clothing accommodations which covers the arms.

78.    Defendant's explicit policy provides clearly delineated accommodations regarding dietary constraints for individuals with medical needs. Defendant does not have a similar delineated policy to provide for religious-based meal accommodations.

79.    Ms. Sweissi continues to feel deeply traumatized, dehumanized, and exposed as well as psychologically distraught due to the events which transpired on or about November 6, 2024.

80.    The policy of hijab-removal for booking photographs has been applied nearly uniformly and ubiquitously by different Dallas County detention officers across different dates and times against hijab-wearing women.

81.    A notice of suit was served on December 27, 2024.

82.    It is Plaintiff's intent to show that all facts asserted in this pleading relate to Dallas County's policies, practices, customs, or a complete failure to train, and support the liability claims contained herein. These policies, practices, customs, and omissions alleged in this pleading, individually or working together, and whether supporting episodic acts and omissions, were the direct and proximate causes of the constitutional violations to which Plaintiff was subjected.

83.    Defendant knew, or should have known, when booking Plaintiff into Lew Sterrett, that detention officers had not been sufficiently trained on their modified policies and would not meet constitutional obligations to protect Plaintiff's free expression of religion – particularly since this very issue is central to the cause of action in which they are already defending a civil rights lawsuit.

84.    Further, Defendant's modified written policy requiring a change to the jail issue paper head covering does not sufficiently accommodate Plaintiff's religious requirements.

85.     The chief policy maker for Dallas County is Sheriff Marian Brown. Upon information and belief, Sheriff Mariam Brown is aware of the continued practice of removal of religious headwear for mugshots, the failure to provide religious meals, the failure of current uniforms to meet religious needs, and the policy requiring all inmates regardless of basis for arrest and/or criminal history to be subjected to a strip search.

## FIRST CAUSE OF ACTION

### The Religious Land Use and Institutionalized Person Act 42 U.S.C. § 2000cc

86.     Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

87.     The Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA") provides, in relevant part, the following: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

88.     At all relevant times, Defendant met the definition of the term "government" under RLUIPA. *See* 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

89.     At all relevant times, the locations where Dallas County Sheriffs detain and photograph arrestees (including Lew Sterrett Justice where the events detailed above transpired) are federally funded "institutions" as defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

90.     At all relevant times, Plaintiff was "confined to institutions" as defined under RLUIPA when the events alleged above transpired.

91.     At all relevant times, the Defendant institution received federal financial assistance within the scope of RLUIPA, including, but not limited to, the Department of Justice's Justice Assistance Grant (JAG) and funds under the American Rescue Plan Act.

92.     Defendant Dallas County substantially burdened Plaintiff's religious exercise by confiscating her hair ties, under piece, and hijab without providing a fully suitable alternative; by requiring her to remove her hijab completely during her booking photograph; and by failing to provide her with sleeves to cover her arms when she was required to change into the inmate uniform. Additionally, Defendant Dallas County failed to accommodate Plaintiff's religious-based dietary restrictions and provide halal-compliant food.

93.     Defendant's acts or omissions, policies, and customs do not further a compelling government interest.

94.     Defendant's acts or omissions, policies, and customs are not the least restrictive means of furthering a compelling government interest.

95.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has sustained damages, and have suffered and continue to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

**SECOND CAUSE OF ACTION**
**Free Exercise Clause**
**(42 U.S.C. § 1983)**

96.     Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

97.     42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

98.     At all relevant times, Defendant acted under color of state law.

99.     Under the First Amendment of the Constitution of the United States of America, Plaintiff has the right to freely exercise her religion.

100.    By forcing Plaintiff to remove her religious head covering for post-arrest photographs and failing to provide an adequate alternative after confiscating her hijab during her confinement, Defendant deprived Plaintiff of her right to freely exercise her religion in contravention of the First Amendment's Free Exercise Clause as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States.

101.    At all times relevant hereto, Defendant knew or should have known that there is a large Muslim population in and around Dallas, including women who wear hijabs as part of their religious practice and sincerely held religious belief.

102.    At all times relevant hereto, Defendant acted pursuant to a policy or custom which denies inmates free exercise of religion by removing detainees' religious head coverings.

103.    Upon information and belief, Dallas County had a policy, practice, and custom that required removal of all head coverings without allowing exceptions for religious beliefs. Even once Dallas County allegedly modified this policy, practice, and custom, it failed to implement the new policy by training detention officers accordingly.

104.    Defendant Dallas County Sheriff's Department's policies or customs, and/or their failure to adopt clear policies and failure to properly train their deputies, were a direct and proximate cause of the constitutional deprivation suffered by Plaintiff.

105.     Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

106.     The existence of Plaintiff's photo in law enforcement databases and the policies of Dallas County Sherriff are likely to continue to harm Plaintiff without equitable relief.

### THIRD CAUSE OF ACTION
### Freedom of Worship
### (Tex. Const. art. I, § 6)

107.     Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

108.     Texas Constitution Article I, section 6 states, "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences… No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion… TEX. CONST. art. I, § 6.

109.     Defendant's policies that require arrestees who wear religious head coverings to remove those head coverings to be photographed violate Article I, Section 6 by unduly burdening Plaintiff's religious practice. Specifically, the policies burden Plaintiff's ability to adequately cover herself according to her sincerely held religious beliefs.

110.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff continues to suffer harm and a burden on her religious exercise from the continued publication of her booking photographs in the databases used by Defendant and is likely to suffer similar future harms without equitable relief.

## FOURTH CAUSE OF ACTION
### Texas Religious Freedom and Restoration Act
### (Tex. Civ. Prac. & Rem. Code § 110.003)

111.     Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

112.     Under the Texas Religious Freedom and Restoration Act, "A government agency may not substantially burden a person's free exercise of religion."

113.     By forcing Plaintiff to remove her religious head coverings for post-arrest photographs and failing to provide an adequate alternative after confiscating her hijab during her confinement, the Defendant interfered with Plaintiff's right to wear her head covering as her religion mandates and burdened her free exercise of religion.

114.     By depriving Plaintiff of her hijab and long sleeves during her detention, Defendant Dallas County interfered with her right to cover her body as her religion mandates. The deprivation of her hijab burdened her free exercise of religion.

115.     As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment. Further, Plaintiff continues to suffer a burden on her religious exercise from the continued publication of her booking photographs in the databases utilized by Defendant and is likely to suffer similar harms in the future without equitable relief.

**FIFTH CAUSE OF ACTION**
**Violation of the Fourth Amendment of the US Constitution**
**(42 U.S.C. § 1983)**

116.    Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

117.    The Fourth Amendment of the U.S. Constitution clearly states the "right of the people to be secure in their persons…. against unreasonable searches, shall not be violated,"

118.    Dallas County maintains an unconstitutional policy of requiring humiliating and degrading strip searches of every individual who is booked into their facilities. Regardless of whether this individual is arrested for a violent crime and/or a drug related crime. This is an unreasonable search without reasonable suspicion or probable cause.

119.    Jail officials may strip search a person arrested for a minor offense and detained pending the posting of bond *only if* they possess a reasonable suspicion that he is hiding weapons or contraband. *Watt v. City of Richardson Police Dep't, 849 F.2d 195, 197 (5th Cir. 1988)*. A reasonable suspicion may arise from factors such as "the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Id.* (quoting *Giles v. Ackerman, 746 F.2d 614, 617 (9th Cir. 1984), cert. denied, 471 U.S. 1053, 85 L. Ed. 2d 479, 105 S. Ct. 2114 (1985))*.

120.    Dallas County had no reasonable suspicion to believe that Ms. Sweissi was hiding weapons or contraband. Ms. Sweissi's fourth amendment rights were violated.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a)    Declare that Defendants' discriminatory practices violate the RLUIPA, 42 U.S.C. § 2000cc *et seq.*; the Free Exercise Clause of the First Amendment to the

United States Constitution; Article 1, Section 6 of the Texas Constitution; and the Texas Religious Freedom and Restoration Act;

b)      Enjoin Defendant, Defendant's agents, employees, and successors, and all other persons in active concert or participation with Defendant, from requiring the removal of any religious head or hair coverings for the purpose of post-arrest photographs;

c)      Require Defendant to remove, delete, and permanently destroy any photographs from all databases offending Plaintiff's rights to wear her religiously-mandated head covers;

d)      Require Defendant to adopt nondiscriminatory practices to prevent encroachment on the religious rights of arrestees and detainees in the future;

e)      Award such damages to Plaintiff as will fully compensate her emotional distress suffered due to Defendant' unlawful conduct;

f)      A jury trial on all appropriate issues;

g)      Award the Plaintiff's attorneys' fees and costs under 42 U.S.C. § 1988 and state law;

h)      Grant such further relief as the Court deems just, equitable, and proper.

By:    */s/ Huma T. Yasin*
Huma T. Yasin, Esq.
Texas Bar No. 24115971
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
P: 214-932-3030 | F: 972-275-9967
E: hyasin@spanglerlaw.com

*/s/ David Burns*
David Burns, Esq.
Texas Bar No. 24126298
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
P: 214-932-3030 | F: 972-275-9967
E: dburns@spanglerlaw.com

*/s/ James A. Spangler, Jr.*
James A. Spangler, Jr., Esq.
Texas Bar No. 24106454
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
P: 214-932-3030 | F: 972-275-9967
E: jim@spanglerlaw.com

*/s/Marwa Elbially*
Marwa Elbially, Esq**.**
Texas Bar No. 24090089
**ELBIALLY LAW OFFICE, PLLC**
704 East 15th Street, Suite 204
Plano, TX 75074
T: 972.423.7330
E: info@elbiallylaw.com

PLAINTIFF'S ATTORNEYS