UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANA SWEISSI, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-1366-X |
| | § | |
| DALLAS COUNTY, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dallas County's motion to dismiss.  (Doc. 13). After reviewing the record and applicable law, the Court **GRANTS** Dallas County's motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff Jana Sweissi's ("Ms. Sweissi") First Amendment and Fourth Amendment claims.  The Court grants her leave to replead to cure the defects this Order identifies.

## I.  Background

This case arises out of Dallas County's alleged violation of Ms. Sweissi's constitutionally protected religious exercise.  Dallas County modified its standard operating procedures in May 2024 (May 2024 Policy) to establish a new procedure for religious-based exceptions.  The new procedure provided inmates with a jail-issue paper head covering, called a Tyvek hood, and allowed inmates to wear the Tyvek hood in its facilities, including in booking photos.

In October 2024, Ms. Sweissi was involved in a major car crash.  The next month, she discovered a warrant was issued for her arrest for reckless driving and

1

voluntarily presented herself to the Lew Sterrett Justice Center to resolve the warrant.

Ms. Sweissi is a devout Muslim woman who observes the practice of wearing a hijab—covering her hair, neck, ears, arms, torso, and body in the presence of men to whom she is not related by either blood or marriage. Upon turning herself in, officers strip searched Ms. Sweissi. Officers allowed Ms. Sweissi to remain in her original garments, including her hijab, but the officers confiscated Ms. Sweissi's claw clip and rubber band, which she alleges made it difficult to keep her hair secure under her hijab.

Sometime later, officers returned and confiscated Ms. Sweissi's hijab offering her a Tyvek hood as a replacement. But Ms. Sweissi expressed the Tyvek hood was inadequate to satisfy her religious obligations because portions of her hair remained uncovered, but no further action was taken.

When Ms. Sweissi was called up to have her booking photograph taken, she protested when officers requested that she remove the Tyvek hood for a booking photo and threatened that if she refused, she would have to wait in jail until she complied. Ms. Sweissi subsequently removed her Tyvek hood for the booking photograph, which she alleges was later disseminated online. Afterward, Ms. Sweissi was strip searched a second time and required to change into Dallas County's short-sleeved jail-issue inmate uniform, which exposed her arms, despite her continued objections.

Ms. Sweissi subsequently brought this case against Dallas County alleging various causes of action. Dallas County seeks dismissal of her First Amendment and

2

Fourth Amendment claims, asserting that the complaint fails to plead sufficient facts to establish *Monell* liability.[1]  Ms. Sweissi stipulates to the dismissal of her Fourth Amendment claim.[2]

## II. Legal Standard

To survive a Rule 12(b)(6) dismissal, a complaint must "state a claim upon which relief can be granted."[3]  The complaint must allege facts sufficient "to state a claim to relief that is plausible on its face."[4]  And there must be sufficient facts for the Court to be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]  In its evaluation, the Court construes the complaint liberally in favor of the plaintiff and accepts all well pled facts in the complaint as true.[6]  Conclusory statements or legal conclusions are not credited.[7]

## III. Analysis

Municipal and county governments may be sued under section 1983 if they are "alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[8]  A plaintiff "must plead facts that plausibly establish that (1) an official policy

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

[2] Doc. 16 at 13.

[3] FED. R. CIV. P. 12(b)(6).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[7] *See Ashcroft*, 556 U.S. at 678.

[8] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (cleaned up).

(2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[9]

## A. First Amendment Claim

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."[10]  When considering whether a plaintiff's rights under the Free Exercise Clause are violated, a court must determine whether the plaintiff's religious exercise has been burdened and whether the burden the government has imposed is constitutionally permissible.[11]

### i. Official Policy

Ms. Sweissi adequately pled that a written policy existed regarding the inadequate Tyvek hood, but she fails to plausibly plead an official policy existed regarding her other allegations: (1) removal of religious head covering for booking photo, and (2) failure to provide adequate inmate uniform.

> There are three ways of defining an official custom or policy for the purposes of *Monell* liability: 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. 3. A single decision may also constitute municipal policy in the rare circumstance

---

[9] *St. Maron Props., L.L.C. v. City of Hou.*, 78 F.4th 754, 760 (5th Cir. 2023) (cleaned up).

[10] U.S. CONST. amend. I.

[11] *Fulton v. City of Phila.*, 593 U.S. 522, 532–33 (2021).

when the official or entity performing the specific act that forms the basis of the section 1983 claim is the official or entity possessing final policymaking authority.[12]

"Liability must rest on official policy, meaning the governmental entity's policy, not the policy of an individual official."[13]  For the purposes of section 1983, a policy is defined as "duly promulgated policy statements, ordinances or regulations."[14]  A custom is defined as "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."[15]

Because Ms. Sweissi alleges multiple violations of the Free Exercise Clause, the Court addresses whether an official policy or custom existed as to each allegation.

### *Tyvek Hood*

Ms. Sweissi alleges the May 2024 Policy mandates that detention officers confiscate any religious head covering a detainee is wearing upon entry and replace it with a Tyvek hood.[16]  In her response to Dallas County's motion to dismiss, Ms. Sweissi states this written policy "is self-evident, [and] it does not even require a logical inference."[17]  The Court agrees.  Taking Ms. Sweissi's allegations as true, the

---

[12] *Fareed v. City of Carrollton*, No. 3:24-CV-3251-N, 2025 WL 1707957, at \*2–3 (N.D. Tex. June 17, 2025) (Godbey, C.J.) (cleaned up).

[13] *Hoskins v. Kaufman Indep. Sch. Dist.*, No. 3:03-CV-0130-D, 2003 WL 21517830, at \*6 (N.D. Tex. June 30, 2003) (Fitzwater, J.) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).

[14] *Piotrowski v. City of Hou.*, 237 F.3d 567, 579 (5th Cir. 2001).

[15] *Id.* (quoting *Webster v. City of Hou.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

[16] Doc. 11 ¶ 30.

[17] Doc. 16 at 10.

written policy, on its face, compels the substitution of a religious head covering with what she alleges to be an inadequate Tyvek hood. These allegations are sufficient to establish the existence of an official policy, satisfying the first prong of *Monell* with respect to Ms. Sweissi's Tyvek hood claim.

### *Booking Photograph*

Ms. Sweissi next contends that the first prong of *Monell* is satisfied as to her claim that officers required her to remove her head covering for a booking photograph under two theories: (1) a pattern or practice of improper removal, and (2) an alleged failure to train regarding the May 2024 Policy. Indeed, Ms. Sweissi acknowledges that "Dallas County has amended its policies to allow religious head coverings in photos,"[18] thereby expressly conceding she is not challenging the written May 2024 Policy itself. The Court addresses the alleged pattern or practice of non-compliance here and considers the failure-to-train theory in a separate section below.[19]

Ms. Sweissi fails to establish a pattern of abuse with regard to the booking photograph sufficient to establish a policy for section 1983 purposes. "[T]o establish a particular practice as a widespread or persistent enough as to amount to a policy for Section 1983 purposes, [plaintiff] must show that there was a pattern of abuses that transcends the error made in a single case."[20] "Proving a pattern is a heavy

---

[18] Doc. 11 ¶ 56.

[19] *See infra* Section III.A.iv.

[20] *Ware v. Bishop*, No. 1:23-CV-00220-BU, 2024 WL 1915396, at *4 (N.D. Tex. Jan. 31, 2024), *report and recommendation adopted*, No. 1:23-CV-00220-H, 2024 WL 1914357 (N.D. Tex. May 1, 2024) (Hendrix, J.) (citing *Piotrowski*, 237 F.3d at 582) (cleaned up).

burden."[21]   Accordingly, it is a burden "that has rarely been met."[22]   The practice must be "so persistent and widespread as to practically have the force of law."[23]   And the Fifth Circuit has held that plaintiffs fail to meet this burden even when they allege that dozens of incidents over several years have occurred.[24]   Moreover, factual context for incidents must be alleged.[25]

Ms. Sweissi first argues that "[t]he statements made by the female detention officer and her supervisor are, standing alone, sufficient to demonstrate a continued pattern or practice of hijab removal at Lew Sterrett."[26]   However, "a single incident is insufficient to show a pattern or persistent custom,"[27] so this argument fails.

She next contends that "[t]he policy of hijab-removal for booking photographs has been applied nearly uniformly and ubiquitously by different Dallas County detention officers across different dates and times against hijab-wearing women."[28] As evidence, Ms. Sweissi cites "two other federal civil cases, with a total of four

---

[21] *Estate of Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 309 (5th Cir. 2020) (cleaned up).

[22] *Id.* (cleaned up).

[23] *Peña v. City of Rio Grande City*, 879 F.3d 613, 621–22 (5th Cir. 2018) (cleaned up).

[24] *See, e.g.*, *Peterson v. City of Ft. Wor.*, 588 F.3d 838, 851 n.4 (5th Cir. 2009) (holding that twenty-seven instances of excessive force over four years is insufficient to establish municipal custom in Fort Worth); *Pineda v. City of Hou.*, 291 F.3d 325, 329 (5th Cir. 2002) (holding that eleven warrantless searches is insufficient to establish a municipal custom in Houston); *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir. 1986) (holding that a dozen incidents over two and a half years is insufficient to show municipal policy in Houston).

[25] *See York v. Welch*, 2024 WL 775179, at *4 (5th Cir. Feb. 26, 2024).

[26] Doc. 11 ¶ 57.

[27] *Fareed*, 2025 WL 1707957, at *3 (citing *Peña*, 879 F.3d at 622).

[28] Doc. 11 ¶ 80.

plaintiffs, pending against Dallas County for the same conduct" explaining that "Ms. Sweissi's case is the third case from conduct occurring in the year 2024 alone."[29]

But more than two instances are required to establish a pattern.[30] It is more likely that at least twenty-seven other instances of hijab-removal for booking photographs would be needed to establish such notice for a political subdivision of Dallas County's size.[31] Additionally, the prior incidents Ms. Sweissi cites also predate Dallas County's revision of its written policy and therefore do not bear on the policy in effect at the time of her booking. As those earlier events arose under a different policy regime, they do not establish a continuing unconstitutional custom.

Accordingly, because these allegations are insufficient to establish the existence of an official policy, Ms. Sweissi fails to establish the first prong of *Monell* with respect to her claim regarding the removal of her head covering for the booking photographs.

### Inmate Uniform

Ms. Sweissi next alleges that Dallas County's jail-issued inmate uniform fails to accommodate her religious requirements by exposing parts of her body that her religion mandates must be covered.[32] The Court construes this as an attempt to plead a custom or practice of issuing only short-sleeve inmate shirts. However, Ms. Sweissi's complaint contains no allegations of prior, similar incidents or other facts

---

[29] *Id.* ¶ 57.

[30] *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017).

[31] *See supra* note 24.

[32] Doc. 11 ¶ 76.

supporting a persistent, widespread practice sufficient to plausibly establish such a custom. Accordingly, Ms. Sweissi fails to sufficiently plead the existence of an official policy or custom, and her claim regarding the jail-issued uniform fails under *Monell*'s first prong.

### ii. Policymaker

Ms. Sweissi and Dallas County agree that the chief policymaker for Dallas County is the elected Dallas County Sheriff, Marian Brown.[33] The county sheriff is the chief and final county policymaker for law enforcement, and the sheriff's directives establish county policy.[34] However, Ms. Sweissi is not required to plead the identity of Dallas County's policymaker. Instead, she must plead "more than speculation that any particular policymaker . . . knew about the alleged custom."[35]

*El-Hussain v. Dallas County* is instructive here.[36] In that case, Judge Boyle stated that in a case where plaintiffs asserted a First Amendment violation for the forced removal of their head coverings, "they plead no facts to allow the Court to draw a reasonable inference that this process was promulgated by the Sheriff or any particular policymaker."[37] Ms. Sweissi's defect here is the same as she "invites no more than speculation that any particular policymaker" knew of the alleged policies.[38]

---

[33] Doc. 11 ¶ 85; Doc. 13 at 6.

[34] *Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990) ("It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement.").

[35] *Peña*, 879 F.3d at 623.

[36] No. 3:24-CV-0737-B, 2024 WL 4446997, at *4 (N.D. Tex. Oct. 7, 2024) (Boyle, J.).

[37] *Id.*

[38] *Id.* (cleaned up); Doc. 11 ¶ 85.

9

This is true for all three alleged policies: the Tyvek hood, the removal of the Tyvek hood for the booking photograph, and the inadequate inmate uniform.  Accordingly, Ms. Sweissi fails to sufficiently plead the involvement of a final policymaker, and her complaint fails under *Monell*'s second prong.

### iii. Moving Force

Ms. Sweissi alleges Dallas County's policies were the moving force behind multiple First Amendment violations.[39]  To prove a moving force, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[40]  The "municipal decision" must "reflect[] deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."[41]

The Fifth Circuit has made clear that this is a "high standard."[42]  "The connection must be more than a mere but for coupling between cause and effect."[43]  So "a showing of simple or even heightened negligence will not suffice."[44]

Ms. Sweissi's allegations fail to meet *Monell*'s demanding causation requirement by failing to assert any deliberate indifference and only asserting a mere causal connection existed between municipal actions and her alleged constitutional

---

[39] Doc. 11 ¶ 104.

[40] *Valle v. City of Hou.*, 613 F.3d 536, 542 (5th Cir. 2010) (cleaned up).

[41] *Id.*

[42] *Id.*

[43] *Id.* at 546 (cleaned up).

[44] *Id.* at 542 (cleaned up).

10

violations.[45]  Accordingly, Ms. Sweissi fails to sufficiently plead the alleged policies were the moving force behind her alleged harm, so her complaint fails under *Monell*'s third prong.  Because Ms. Sweissi has not sufficiently pled the promulgation or ratification of any official policy by a policymaker and fails to meet the high standard of a direct causal link, the Court need not reach the substance of the alleged constitutional violations.[46]

### iv. Deliberate Indifference—Failure to Train

The Court construes that Ms. Sweissi's alternative theory of recovery—failure to train and inaction following the institution of the May 2024 Policy, which allowed religious head coverings in booking photos—as similarly infirm.

To make a claim of failure to provide proper training, a plaintiff must show "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a moving force in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy."[47]  "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective."[48]

Ms. Sweissi acknowledges that Dallas County amended its policies to allow religious head coverings in booking photos.[49]  However, she alleges that the

---

[45] *Id.*; *see* Doc. 16 at 12–13.

[46] *See Khan v. City of Richardson*, No. 3:25-CV-01169-O, 2026 WL 603729, at *8 (N.D. Tex. Mar. 4, 2026) (O'Connor, C.J.).

[47] *Valle*, 613 F.3d at 544 (cleaned up).

[48] *Zarnow,* 614 F.3d at 170 (cleaned up).

[49] Doc. 11 ¶ 56.

"[d]etention officers assigned to take mug shots are not aware that the new policy requires accommodation for the booking photograph if the inmate covers their hair for religious reasons."[50]

But, as far as the Court can tell from the record, Ms. Sweissi's suit is the first against Dallas County since the alteration of their written policy. The Fifth Circuit has "been wary of finding municipal liability" for failure to train claims based on a single incident.[51]

"Absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged training inadequacy."[52] "For a violation to be highly predictable, the municipality must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face."[53] "Only where a failure to train reflects a deliberate or conscious choice by a municipality . . . can a city be liable for such a failure under § 1983."[54]

*Fareed v. City of Carrollton* is instructive here.[55] In *Fareed*, the plaintiff argued that the alleged violation arose from a failure to train because religious head

---

[50] *Id.* ¶ 67.

[51] *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003) (cleaned up).

[52] *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (cleaned up).

[53] *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482–83 (5th Cir. 2021) (cleaned up).

[54] *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (cleaned up).

[55] *See Fareed*, 2025 WL 1707957.

12

coverings were widely recognized and readily available.[56]   However, the court in *Fareed* declined to find a failure to train because the plaintiff "failed to allege that it was highly predictable that this was a recurrent situation that a particular employee is certain to face."[57]   Ms. Sweissi likewise fails to allege that the inadequate replacement of her hijab and the removal of her head covering for her photograph presented a highly predictable recurrent situation that a particular employee of Dallas County is certain to face.

Because Ms. Sweissi has not sufficiently alleged a policy, pattern or custom, or a failure to train, the Court finds that she has failed to meet the *Monell* standard to plead municipal liability and dismisses her section 1983 claims arising under the First Amendment against Dallas County.

### v. Leave to Amend

Under Federal Rule of Civil Procedure 15, "a party may amend its pleading with the opposing party's written consent or the court's leave" before the deadline to amend pleadings has past.[58]   The rule further states that "[t]he court should freely give leave when justice so requires."[59]   The Court **GRANTS** Ms. Sweissi leave to amend her First Amendment claims.

---

[56] *Id.* at *4.

[57] *Id.* (quoting *Hutcheson*, 994 F.3d at 482–83) (cleaned up).

[58] FED. R. CIV. P. 15(a)(2).

[59] *Id.*

## B. Fourth Amendment Claim

Ms. Sweissi stipulated to the dismissal of her Fourth Amendment claim, requesting that she be given leave to amend her complaint if the Court found it in the interest of justice.[60]  The Court **GRANTS** Ms. Sweissi leave to amend her complaint, but identifies the defects in her complaint to provide Ms. Sweissi her final opportunity to cure.

Ms. Sweissi fails to allege specific facts as to her Fourth Amendment claim that would satisfy the three prongs of the *Monell* test, which are outlined above.[61]  Ms. Sweissi does not plausibly allege the existence of a written policy.  Instead, she merely makes the conclusory statement that, "[o]n information and belief, Dallas County has a written policy requiring detainees to be subjected to a strip search during booking."[62]  Neither does Ms. Sweissi plausibly "show a pattern or persistent custom"[63] of "requiring humiliating strip searches of every individual who is booked into their facilities."[64]  Again, these assertions are wholly conclusory.

Ms. Sweissi also makes the generic assertion that "Sheriff Mariam Brown is aware of . . . the policy requiring all inmates regardless of basis for arrest and/or criminal history to be subjected to a strip search,"[65] but this "invites no more than

---

[60] Doc. 16 at 13.

[61] *See supra* Part III(A)(i–iii).

[62] Doc. 11 ¶ 21.

[63] *Fareed*, 2025 WL 1707957, at *3 (citing *Peña*, 879 F.3d at 622).

[64] Doc. 11 ¶ 118.

[65] *Id.* ¶ 85.

14

speculation that any particular policymaker"[66] knew of the alleged policy. Furthermore, she does not meet the "high standard" for alleging the moving force causation requirement because has not pled deliberate indifference. Finally, Ms. Sweissi does not plausibly allege her alternative theory of recovery of failure to train, the requirements of which are outlined above.[67] To cure these defects in her complaint, Ms. Sweissi must allege specific, nonconclusory facts that support each element of *Monell* liability in addition to those supporting her underlying Fourth Amendment claim.

## IV. Conclusion

Accordingly, the Court **GRANTS** Dallas County's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Ms. Sweissi's First Amendment and Fourth Amendment claims. The Court also **GRANTS** Ms. Sweissi leave to amend her complaint to cure its deficiencies within 28 days of the issuance of this Order.

**IT IS SO ORDERED** this 8th day of July, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[66] *El-Hussain*, 2024 WL 4446997, at *4 (cleaned up); Doc. 11 ¶ 85.

[67] *See supra* Part III(A)(iv).

15